[No. 29455. Department One. March 21, 1945.]

EDISON OYSTER COMPANY, *Respondent*, v. PIONEER OYSTER COMPANY *et al.*, *Appellants*, BEN F. NAUMAN *et al.*, *Respondents.*[1]

[1]Reported in 157 P. (2d) 302.

*Henderson & McBee* and *Lundin & Barto*, for appellants.

*Ogden & Ogden, Kumm & Hatch, Groff & Kelleran,* and *William A. Herren,* for respondents.

JEFFERS, J.—This is an action for a declaratory judgment, instituted by the Edison Oyster Company, Incorporated, a corporation, against the Pioneer Oyster Company, a corporation, Alfred H. Lundin and wife, Ben F. Nauman and wife, A. E. Shulz, Anna Shulz, and Rupert H. Bailey and wife. It was started in 1943 for the purpose of requiring the defendants to appear and assert what, if any, right, title, or interest they claim in and to certain oysters which plaintiff was removing from certain tidelands in Padilla bay; and to obtain a decree determining, establishing, and declaring the rights of the parties to this action in and to the oysters.

Plaintiff bases its claim of title to the oysters in question, and its right to remove them, upon a contract with defendants Nauman under date of May 11, 1943, and subsequent modifications thereof, granting it the right to remove the oysters from the tidelands therein described, which tidelands will hereinafter be referred to as the "Nauman" tracts.

It is alleged in the complaint that plaintiff, Edison Oyster Company, under its contract with defendants Nauman, had removed several thousand bushels of the oysters when it was notified that defendant Pioneer Oyster Company claimed title to the oysters on the tracts covered by plaintiff's contract and would hold plaintiff liable for the value of any oysters removed; that defendants Nauman are insisting on plaintiff's performance of the contract and that they are entitled to such performance and payments due thereunder.

Defendant Pioneer Oyster Company appeared separately, by answer and cross-complaint, basing its claim of ownership to the oysters here in question on its allegations that in April, 1934, the Padilla-Point Oyster Company, under a lease agreement, planted 26,492 boxes of oyster seed upon tracts numbered 202 to 257, inclusive, plat of Padilla bay, Skagit county, Washington, owned by Alfred H. Lundin and wife; that, due to the action of the wind and the waves, on October 15, 1934, a large part of the oyster seed drifted to the Nauman tracts; that the oysters which plaintiff is claiming, and seeking to remove, are oysters resulting from the seed planted by Padilla on the Lundin tracts and belong to Pioneer Oyster Company, which has acquired all the assets and rights of the Padilla-Point Oyster Company. It is further alleged by Pioneer Oyster Company that it informed plaintiff by letter dated November 12, 1943, that the oysters which plaintiff was removing were the property of Pioneer Oyster Company. Defendant Pioneer Oyster Company has asked that it be adjudged to be the owner of the oysters in question.

Defendants Lundin and Bailey filed a separate answer. These defendants alleged that Padilla-Point Oyster Com-

pany planted 26,492 boxes of seed oysters on tracts 202 to 257, inclusive, in April, 1934, and that the oysters belonged to Padilla, as legal owner for the benefit of the landowners leasing their land to Padilla; that the Padilla-Point Oyster Company was dissolved by order of court, and thereupon the Pioneer Oyster Company became the legal owner of said oysters; that the beneficial interest of defendants Lundin to the oysters is in the proportion of 1,000 to 75,682 cases; that defendants Bailey, as individuals, have no right, title, or interest in and to the oysters, their only interest being as a stockholder in Pioneer Oyster Company.

Defendants Nauman and A. E. Shulz appeared and admitted the allegations of the complaint. They affirmatively alleged that defendants Pioneer Oyster Company, Lundin, and Bailey have no right, title, or interest in the oysters which Nauman contracted to sell to plaintiff. They also alleged that, if defendants Pioneer Oyster Company, Lundin, and Bailey ever had any claim in or to these oysters, such claim is barred by the statute of limitations.

Plaintiff, by reply, denied the affirmative allegations contained in the answer of defendants Pioneer Oyster Company, Lundin, *et al.,* and alleged that, if Pioneer Oyster Company ever had cause of action as alleged in its cross-complaint, such claim had not been asserted within the time limited by law and was therefore barred by the statute of limitations.

Defendant Pioneer Oyster Company, by reply, denied the affirmative matter set up in the answer of defendants Nauman *et al.*

No objection was made to the form of the proceedings, but all parties were interested in having a determination of their rights, if any, in and to these oysters.

Defendant Pioneer Oyster Company voluntarily assumed the burden of proof and proceeded to introduce its evidence. At the close of this evidence, Nauman and wife, A. E. Shulz, and Anna Shulz interposed the following motion:

"If your Honor please, at this point, on behalf of Mr. and Mrs. Nauman and on behalf of Miss Shulz and her mother, we now move that the cause of action contained in the cross-

complaint of the defendant, Pioneer Oyster Company, be dismissed."

The above motion was, in fact, a challenge to the sufficiency of the evidence to support any claim of Pioneer Oyster Company to these oysters and was so considered by the trial court, as the reason assigned to support the above motion was that the statute of limitations had run against any claim Pioneer may have had in and to these oysters.

Plaintiff, Edison Oyster Company, Incorporated, joined in the above motion for the same reason advanced by the Naumans and the Shulzes.

In addition, counsel for Edison Oyster Company, Incorporated, amended the motion, as follows:

"MR. KUMM: I would like to amend the motion to be a motion for judgment permitting us to proceed with our contract without interference. I did not understand whether your Honor said it would be so deemed. THE COURT: I know no reason why judgment in this cause should not take the form suggested, with the findings of fact along the lines I suggested."

There can be no question as to how the trial court considered the above motion and the amendment thereto, since preceding the actual findings of fact is the following statement:

"The defendant Pioneer Oyster Company having assumed the burden of proof of affirmatively establishing its rights and claims as pleaded in its cause of action as contained in its answer and cross-complaint herein, and having offered evidence in support thereof, and having rested its case, the defendants Ben F. Nauman and wife and A. E. Shulz and Anna Shulz having thereupon challenged the sufficiency of the evidence to support the claim of the Pioneer Oyster Company to the oysters involved herein, the plaintiff having joined in said motion and having moved for judgment establishing its right to proceed with the performance of its contract with the defendant Ben F. Nauman, as set forth in plaintiff's complaint herein, . . . now makes the following: FINDINGS OF FACT."

We have set out the above record for the reason that appellants in their brief, on page 6, state:

"At the conclusion of the introduction of the evidence by the Pioneer Oyster Company, a motion for non-suit was made by respondents, Nauman and Edison Oyster Company. The motion was granted, the court entered findings of fact, conclusions of law, and a decree."

The first assignment of error is that the court erred in granting the motion for nonsuit. The second assignment is that the court erred in entering any findings of fact.

It is apparent from the above record that the trial court did not consider the motion a motion for nonsuit, but a motion to challenge the sufficiency of the evidence to support any claim of Pioneer to the oysters.

Under this record, we are of the opinion that the trial court was justified in making and entering findings of fact.

The findings of fact made by the trial court are amply supported by the evidence, and in our statement of the facts we have followed and accepted the court's findings. In one or two instances we have given additional facts not specifically found by the trial court but in regard to which there is no dispute.

Defendants Lundin and wife have been, and now are, the owners of the legal title to certain tidelands in Skagit county, Washington, described as tracts 202 to 257, both inclusive, plat of Padilla bay, which property will be referred to as the "Lundin" tracts. In April, 1934, Padilla-Point Oyster Company, a corporation, hereinafter referred to as "Padilla," planted upon the Lundin tracts approximately 26,492 boxes of oyster seed, the legal title to which, and the oysters resulting therefrom, being vested exclusively in Padilla, under a certain lease agreement entered into on March 1, 1932, between Lundin and wife and Padilla. Under this lease agreement, Lundin and wife, and others, had a beneficial interest in the oysters planted and harvested, or the proceeds of oysters sold. On or about the 15th day of October, 1934, a storm of unusual violence passed over the Padilla bay region, and, as a result thereof, a substantial number of the oysters which had been planted by Padilla, in April, on the Lundin tracts drifted to the

Nauman tracts immediately to the northwest of the Lundin tracts.

While Padilla knew, within a few days after the storm of October 15, 1934, that a large part of the oysters planted on the Lundin tracts had drifted to the Nauman tracts, neither Padilla nor Pioneer made any claim to the oysters on the Nauman tracts or attempted to reclaim them until November 12, 1943, when Pioneer wrote a letter to plaintiff, in which it asserted its claim to the oysters.

During the years 1936 and 1937, defendant Nauman openly, and with the knowledge of and without objection from Padilla, operated a dredge upon the Nauman tracts in the harvesting, removal, and disposal of oysters, some of which oysters were on that part of the Nauman tracts to which, it is claimed, the oysters had drifted which were planted by Padilla on the Lundin tracts.

On the 11th of May, 1943, plaintiff entered into a contract with defendants Nauman for the purchase and removal of oysters upon the Nauman tracts, which contract was made with the full knowledge, consent, and approval of defendants A. E. Shulz and Anna Shulz; and it was while plaintiff was engaged in the removal of the oysters from the Nauman tracts, under the contract, that it was notified by Pioneer, on November 12, 1943, that Pioneer claimed title to the oysters and would hold plaintiff liable for any oysters removed from the Nauman tracts.

It is imperative, because of changing conditions affecting their value and marketability, that oysters be promptly harvested and marketed; and, in view of the claim made by Pioneer, plaintiff could not proceed safely with the performance of its contract until it was determined what, if any, rights the parties hereto have in and to the oysters being removed by plaintiff.

The trial court concluded that all rights of defendant Pioneer, or Padilla, its predecessor in interest, to remove, reclaim, or take possession of any oysters which may have drifted from the Lundin tracts to the Nauman tracts, or which may be situated upon the Nauman tracts, from the seed planted by Padilla, are barred by the statute of limita-

tions and laches of Padilla and Pioneer in their respective failures to assert any rights in and to said oysters. The court further concluded that any right, title, or interest of Pioneer, or Padilla, in and to the oysters upon the Nauman tracts had been lost to them, and each of them, and had become vested in Ben F. Nauman by the open, notorious, and adverse claim of Nauman to the oysters upon the Nauman tracts; that plaintiff is entitled to a judgment granting it the right to remove the oysters upon the Nauman tracts, under its contract, and restraining all of the parties to this action from in any manner interfering with plaintiff's performance of the contract, or from in any manner asserting any claim to the oysters, except under the contract between plaintiff and defendants Nauman.

On February 10, 1944, judgment was entered in accordance with the conclusions above set forth, and, on the same day, defendants Pioneer, Lundin and wife, and Rupert Bailey and wife filed a motion for new trial, which motion was denied on February 23, 1944. Defendants last above named have appealed from the judgment entered.

Appellants' assignments of error are: In granting a motion for nonsuit; in entering any findings of fact; in entering its conclusions of law numbers two and three; in entering the decree; and in denying the motion for new trial.

Appellants, in their brief, first discuss the question of adverse possession, it appearing, from conclusion number three, that the trial court concluded that title to the oysters upon the Nauman tracts had become vested in Ben F. Nauman by virtue of his open, notorious, and adverse claim to the oysters.

Appellants cite 37 C. J. 699; 1 Am. Jur. 845, 846. It appears from these citations that title to personal property may be acquired by adverse possession.

"Where one has had the peaceable, undisturbed, open possession of personal, as well as real, property, with an assertion of his ownership, for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title—a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his rights." 37 C. J. 699.

Appellants then argue that the rules above quoted cannot operate to defeat the title of Pioneer for two reasons: First, because the statute of limitations had not run against appellants' rights; and second, there was no evidence upon which the court could conclude, upon a motion for nonsuit, that the respondents Nauman and Shulz either asserted "ownership for the period which, under the law, would bar an action for its recovery" or that the possession was had under any "claim of right," or open, public, and notorious possession.

Appellants further argue that, if legal action were necessary to recover possession of the oysters, or their value, from respondents, only two forms of action could have been instituted for this purpose, to wit, replevin or conversion; that replevin is a possessory action and must be brought by one claiming the possession of personal property against another wrongfully detaining it and refusing the rightful owner, or person entitled to possession, his rights in the property.

Appellants cite Rem. Comp. Stat., §§ 155, 159, to the effect that an action for the specific recovery of personal property must be brought within three years after the cause of action shall have accrued. Appellants then state that it is their contention

" . . . that in the case at bar *a demand for the possession of the property was a condition precedent, to the bringing of an action for replevin, that there was no evidence of a demand having been made, and that where a demand is prerequisite to the institution of the action that the statute of limitation does not begin to run until the demand is made.*" (Italics ours.)

We shall discuss the question of the statute of limitations, and the necessity of a demand to start the running of the statute, without regard to the question of adverse possession; for, if the statute of limitations has barred appellants from instituting this action, then, so far as they are concerned, they are in no position to question the rights accorded to respondents by this judgment.

We do not think that appellants' statement of the questions raised herein goes far enough, nor does it present the legal principles upon which the trial court decreed that appellants' right to institute this action was barred by the statute of limitations and laches.

It may be admitted, as stated in 54 C. J. 449, cited by appellants, that as a general rule, in order to maintain a replevin action, there must be a timely demand made upon the person who withholds possession, unless the taking was tortious or there were circumstances rendering such demand unnecessary.

It may also be admitted here that there was no tortious taking of these oysters by respondents. It should be kept in mind that a substantial part of these oysters drifted on to the Nauman tracts on October 15, 1934, which fact was immediately known to appellants, but no claim to the oysters was made by appellants until November 12, 1943.

There is no question but that the oyster seed, and the oysters resulting therefrom, constituted personal property. We think it must also be conceded that appellants could have immediately gone upon the Nauman tracts and reclaimed the oysters, or, if such rights were denied them, they could have instituted an action of replevin to obtain such oysters, upon demand first being made. 17 R. C. L. 1203, § 6; 17 R. C. L. 1134, § 55; *Maulsby v. Cook,* 134 Wash. 133, 235 Pac. 23.

While it is true that the subject matter of the cited case was logs cast upon the land of a riparian owner by a freshet, the principle applied in the case, we think, is applicable here.

Appellants pursued neither course, but waited almost nine years before they made any claim to the oyster seed, or the oysters resulting therefrom; and appellants offer no excuse for their failure to make a claim, or demand, for said oysters.

Under this state of facts, we have another well-recognized rule of law that is applicable, relative to the statute of limitations. In 37 C. J. 953, § 324, it is stated:

"Where plaintiff's right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; for it is not the policy of the law to put it within the power of a party to toll the statute of limitations; . . . The rule that, where the right of action depends upon a preliminary step to be taken by plaintiff, he cannot indefinitely delay the taking thereof, rests upon the principle that plaintiff has it in his power at all times to do the act which fixes his right of action."

Appellants had a right of action in replevin to recover their oysters immediately upon discovery that such oysters had drifted upon the Nauman tracts, and the only thing necessary to have been done by them, as a prerequisite to bringing such an action, was make demand upon Nauman. In the early case of *Spinning v. Pierce County,* 20 Wash. 126, 54 Pac. 1006, we accepted the following statement as a correct statement of law:

"Statutes requiring a demand, or some like act, to be made upon public corporations prior to maintaining actions against them are often found; but the prevailing rule appears to be that the cause of action *is deemed to have accrued at the time that the plaintiff could have perfected his right to sue.*" (Italics ours.)

In *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, in which it was suggested that a demand was necessary to perfect the cause of action and that the action was commenced within the statutory period after demand was made, we stated that the weight and better-reasoned authority among those cases cited is to the effect that the demand must be made within a reasonable time; that a reasonable time, in the absence of circumstances justifying or excusing the delay, is the statutory period; and that a demand is too late which is made after the statutory period.

In *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 66 Am. St. 739, an action was brought against the county treasurer and his bondsmen for failure to account for county funds. The statute of limitations was pleaded as a defense

to the action. The county sought to overcome the effect of the plea by showing that it was under disability to commence the action, since it was obligated to obtain leave of the superior court to bring the action, and that the action was commenced within the statutory period after such leave had been obtained. We held this was not a sufficient excuse, saying, in the course of our opinion:

"The weight of authority and reason seems to be that when the respondent had the option at any time to obtain leave of court to bring its action, and did not ask for such leave, it cannot enlarge the statute of limitations by its own delinquency."

See, also, *Temirecoeff v. American Express Co.,* 172 Wash. 409, 20 P. (2d) 23, and *Washington Security Co. v. State,* 9 Wn. (2d) 197, 114 P. (2d) 965, 135 A. L. R. 1330.

█ Assuming, then, for the purpose of this case, that appellants' right of action was in replevin, and that their cause of action did not accrue until they had a right to institute an action in replevin, and assuming that it was necessary for appellants, as a prerequisite to their right to institute such action, to make a demand upon respondents, still, we are of the opinion that appellants have, by their failure to make such demand within three years from the time they were perfectly free to make a demand, lost their rights to institute an action for the recovery of such oysters, and that any claims, rights, or interest they, or any of them, may have had in or to the oysters, are now barred by the statute of limitations.

Our conclusions above stated are based upon the rule that appellants had a reasonable time after October 15, 1934, in which to make demand upon respondents for the oysters; that a reasonable time is the statutory period, or three years. No excuse of any kind, justifiable or otherwise, having been offered for not making such demand, appellants' rights to institute an action to recover such oysters, or their value, are barred by the statute of limitations.

█ Aside from the question of the statute of limitations, we are of the opinion that appellants' right to institute an action to recover these oysters, or their value, is barred by

laches. Immediately after October 15, 1934, appellants knew that the oysters had drifted onto the Nauman tracts. They made no claim of any kind or description to such oyster seed, or the oysters resulting therefrom, until November 12, 1943. They saw Nauman dredging and harvesting some of these oysters in 1936 and 1937, and knew that the oysters were being harvested for the purpose of sale. They stood by until after Ben F. Nauman had entered into a contract with Edison Oyster Company, Incorporated, and this company had harvested a considerable number of these oysters.

Laches in a general sense is the neglect, for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances covering prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another. The doctrine of laches has existed since the beginning of equity jurisdiction, independently of statutes of limitation. (21 C. J. 210 et seq., § 211.)

The above rules are so well established as to need no further citation of authority. We are satisfied that the facts in this case meet every requirement of, and call for the application of, the doctrine of laches.

Having concluded that appellants have lost their right to institute an action to recover the oysters, or their value, and consequently have lost whatever right, title, or interest they, or any of them, may have had in these oysters, we are of the opinion that appellants are in no position to question the judgment entered herein in so far as it awards to respondents certain rights to these oysters. However, in support of the judgment entered, it may be stated that there is evidence herein which shows that respondents have had possession of the oyster seed, and the oysters resulting therefrom, since October 15, 1934; and, in 1936 and 1937, by their acts in dredging, harvesting, and selling some of

these oysters, respondents openly exercised dominion over such oysters.

We are of the opinion that there was sufficient evidence in this case to justify the trial court in granting to respondent Edison Oyster Company, Incorporated, the affirmative relief prayed for in its complaint.

The judgment of the trial court is affirmed.

BEALS, C. J., STEINERT, and GRADY, JJ., concur.

MILLARD, J., concurs in the result.

[1]Reported in 157 P. (2d) 333.